# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

AARON BURNHAM VANTUYL,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C13-4015-LTS

**MEMORANDUM OPINION
AND ORDER**

———————————————

Plaintiff Aaron Vantuyl seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Vantuyl contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant period of time. For the reasons that follow, I find the Commissioner's decision must be affirmed.

## *Background*

Vantuyl was born in 1973 and completed high school. AR 34, 136. He previously worked as a short order cook, van driver helper/furniture mover, hand packager, production helper, fast food worker, commercial cleaner, auto detailer and warehouse worker. AR 56-58, 259-60. Vantuyl protectively filed for DIB and SSI on

June 21, 2010, alleging disability beginning on January 1, 2009,[1] due to anxiety, mild schizophrenia, bipolar disorder and learning problems. AR 175, 179. His claims were denied initially and on reconsideration. AR 65-70. Vantuyl requested a hearing before an Administrative Law Judge (ALJ). AR 89-90. On January 12, 2012, ALJ Jan Dutton held a hearing via video conference during which Vantuyl and a vocational expert (VE) testified. AR 24-64.

On February 6, 2012, the ALJ issued a decision finding Vantuyl not disabled since September 24, 2009. AR 8-19. Vantuyl sought review of this decision by the Appeals Council, which denied review on December 10, 2012. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. §§ 404.981, 416.1481.

On February 7, 2013, Vantuyl commenced an action in this court seeking review of the ALJ's decision. On March 29, 2013, with the parties' consent, United States District Judge Mark W. Bennett transferred the case to me. The parties have briefed the issues and the matter is now fully submitted.

### *Disability Determinations and the Burden of Proof*

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

---

[1] The alleged onset date was later amended to September 24, 2009. AR 29.

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is

considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national

economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### Summary of ALJ's Decision

The ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.

(2) The claimant has not engaged in substantial gainful activity since September 24, 2009, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3) The claimant has the following severe impairments: anxiety disorder, not otherwise specified, with generalized and social difficulties; and mood disorder, not otherwise specified (20 CFR 404.1520(c) and 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the nonexertional

limitations. The claimant is able to perform routine and repetitive unskilled work (SVP 1 or 2) that does not require maintaining attention or concentration for extended periods; dealing with changes; setting goals; or more than brief, superficial (not intense, frequent or constant) social interaction with coworkers, supervisors or the general public.

(6) Step 4 – [t]he claimant is capable of performing past relevant work as a hand packager (medium, unskilled, SVP 2, DOT 920.587-018); auto detailer (medium, unskilled, SVP2, DOT 915.687-034); production helper (medium, unskilled, SVP 2, DOT 529.686-070); and as a warehouse worker (medium, SVP 2, DPT 922.687-058). These occupations do not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

(7) Step 5 – In the alternative, claimant would be able to perform a wide range of unskilled work. Furthermore, the vocational expert specified that, considering the claimant's age, education, work experience, and residual functional capacity, the factors would essentially eliminate only 6% of the jobs available in the unskilled occupational base.

(8) The claimant has not been under a disability, as defined in the Social Security Act, from September 24, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

AR 10-19.

At Step One, the ALJ found Vantuyl had not engaged in substantial gainful activity since his alleged onset date. AR 10. Vantuyl had worked after this date, but none of those jobs were at the level of substantial gainful activity. *Id.*

At Step Two, the ALJ found Vantuyl had the following severe impairments: anxiety disorder, not otherwise specified, with generalized and social difficulties; and mood disorder, not otherwise specified. AR 11. Vantuyl's other alleged impairments

included mild schizophrenia, bipolar disorder and learning problems. The ALJ found the evidence did not indicate these were severe impairments. The ALJ also remarked that Vantuyl had a history of polysubstance abuse and had offered differing accounts as to how long he had been sober. *Id.* Because no medical sources mentioned past substance use as a concern related to his ability to function, the ALJ found it was not a severe impairment and was not material to a finding of disability. *Id.* Finally, the ALJ noted that obesity was considered in evaluating Vantuyl's ability to work, although he had not alleged any limitations related to his physical capacity for work. AR 12.

At Step Three, the ALJ found that none of Vantuyl's impairments met or equaled the severity of a listed impairment when considered singly and in combination. *Id.* Under listings 12.04 (affective disorders) and 12.06 (anxiety related disorders), the ALJ found Vantuyl did not meet the "paragraph B" criteria which require the mental impairment to result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation[2] each of extended duration. *Id.* The ALJ found Vantuyl had mild restriction in activities of daily living, moderate difficulties in social functioning and moderate difficulties with regard to concentration, persistence or pace. AR 12-13. She found no episodes of decompensation. AR 13. She also found that Vantuyl did not meet the "paragraph C" criteria. *Id.*

At Step Four, the ALJ analyzed Vantuyl's RFC and his ability to perform past relevant work. The ALJ found Vantuyl could perform a full range of work at all exertional levels, but had the following nonexertional limitations: he could only

---

[2] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 CFR Part 404, Subpart P, Appendix 1.

perform routine and repetitive unskilled work (SVP 1 or 2)[3] that did not require maintaining attention or concentration for extended periods, dealing with changes, setting goals or more than brief, superficial (not intense, frequent or constant) social interaction with coworkers, supervisors or the general public. AR 14. In making this finding, the ALJ first considered Vantuyl's testimony. She noted that Vantuyl stated he suffered from difficulty concentrating, depression, occasional suicidal ideation, low motivation, anxiety, panic attacks, an aversion to being around other people and difficulty controlling his anger. *Id.* She also described his testimony that he experienced physiological symptoms such as shaking, nausea and feelings of claustrophobia when in proximity to even small groups of people (including strangers or friends) or when faced with changes in routine. *Id.* Such anxiety reactions would result in racing thoughts and would decrease his ability to concentrate and focus. *Id.*

The ALJ found that Vantuyl's impairments could reasonably be expected to cause these alleged symptoms but his statements concerning the intensity, persistence and limiting effects of his symptoms were not fully credible. The ALJ determined that the medical evidence did not fully support Vantuyl's allegations that he was unable to perform any type of work. She pointed out that although Vantuyl had received mental health treatment since at least January 2008, the medical documentation did not demonstrate problems of the same intensity and frequency that Vantuyl alleged or otherwise suggest he was unable to perform any work. AR 15.

The ALJ also noted that Vantuyl's overall course of care was conservative in that it included talk therapy and routine medications with routine dosages. AR 17. She found that the record did not corroborate his allegations of recurring severe anxiety

---

[3] "SVP" refers to Specific Vocational Preparation, defined in Appendix C of the Dictionary of Occupational Titles as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." A position with an SVP of 1 requires a short demonstration only while an SVP of 2 requires vocational preparation of no more than one month. *See Dictionary of Occupational Titles*, Appendix C.

attacks, complete inability to focus or a general psychological condition that would preclude all work activity. *Id.* She also stated that no treating source indicated Vantuyl would be unable to carry out basic work activities. *Id.*

With regard to Vantuyl's allegations of difficulties with social functioning, the ALJ remarked that the record showed he suffers from anxiety, irritability and aversion to people, but was generally devoid of the severe recurring symptoms that Vantuyl alleged. *Id.* His activities included helping others work on their cars, helping others with lawn care, filling sand bags and helping his roommate with a paper route, which suggested that he is able to maintain basic social relationships and can complete basic errands independently. *Id.* The ALJ stated these activities indicated a greater level of functioning than Vantuyl alleged and were not illustrative of someone who would be unable to maintain the focus and concentration required for simple tasks in the majority of unskilled work positions. *Id.* The ALJ also noted the record indicated a rather stable baseline of functioning with only one hospital admittance, after which Vantuyl stabilized quickly. *Id.*

The ALJ also considered Vantuyl's mother's statements, which corroborated Vantuyl's allegations. AR 18. The ALJ found that Ms. Vantuyl's assertions were not more convincing than the weight of the medical evidence and did not demonstrate a disabling impairment. *Id.* The ALJ found her statements to be partially credible and gave them some weight, but to the extent she alleged Vantuyl was disabled, the ALJ discredited her allegations for the same reasons she discredited Vantuyl's. *Id.*

The ALJ described Vantuyl's medical history in detail. She noted that from January 2008 through December 2008, Vantuyl regularly saw Terry Hay, LISW, for therapy. AR 15. Although this timeframe pre-dates Vantuyl's alleged onset date, the ALJ stated it demonstrated that Vantuyl had reported similar symptoms that did not change in severity after his alleged onset date. The ALJ also noted that during this time, Vantuyl had several jobs and reported that he enjoyed his work and that things were going well. *Id.* He rarely mentioned why those jobs ended.

Laurie Warren, PA, also saw Vantuyl in 2008 and through at least November 2011. *Id.* The ALJ found that Warren's records did not demonstrate recurring debilitation over the relevant time period. *Id.* In September 2009, Warren reported Vantuyl was "doing alright" but had a labile mood and complained of having anger spells. *Id.* The ALJ noted that these symptoms were only mentioned a few times in Warren's treatment records. *Id.*

Warren's treatment notes after the alleged onset date indicate that Vantuyl was relatively stable and was getting along with people at home and work. *Id.* The ALJ noted that in November 2011 Vantuyl had voluntarily discontinued all of his psychotropic medications, except Lexapro, indicating he felt better. *Id.* In June 2010 he had an episode of acute depression, was taken to the hospital and acknowledged thoughts of suicide. AR 16. He was admitted but stated he was feeling much better the next day and was discharged despite some indications of expansive mood with tangential thinking, diminished focus and distractibility. *Id.* Warren continued to see Vantuyl, with her treatment notes documenting complaints of lack of concentration, frustration and variable sleep. *Id.* Warren reported that his mental status was largely within normal limits except for occasional ongoing anxiety, depression and feelings of isolation beginning in March 2011. *Id.* She also noted that Vantuyl had a panic attack in June 2011 while in a crowd. *Id.*

In July 2011, Vantuyl resumed therapy with Ivy Clausen, LISW. *Id.* The ALJ acknowledged that the treatment notes reflect a greater level of anxiety, depression, isolation and aversion to crowds, with some reports of difficulty focusing. *Id.* Meanwhile, Warren conducted an assessment in November 2011 in which she described Vantuyl's mood as dysphoric and anxious and stated that he had reported having anxiety attacks and depression. *Id.* Warren also stated Vantuyl had no suicidal ideation, no impairment in memory, adequate energy/motivation and he was able to concentrate "to an extent." *Id.* The ALJ noted the record demonstrated no side effects

to medications, except for one instance of an acute reaction to a medication combination. *Id.*

Vantuyl saw Michael Baker, Ph.D., a consultative examiner, in January 2011. *Id.* After examination and testing, Dr. Baker concluded Vantuyl retained adequate ability to remember and understand instructions, procedures and locations and would be able to use good judgment to respond to changes in the work setting. *Id.* He found Vantuyl's ability to maintain attention, concentration and pace was "questionable" to allow for carrying out of instructions and that his social anxiety would interfere with appropriate interactions with supervisors, coworkers and the general public. *Id.* The ALJ gave Dr. Baker's opinion substantial weight, stating it was based on personal examination and objective medical evidence and was not inconsistent with or contradicted by the rest of the medical evidence. AR 18.

The ALJ also afforded substantial weight to the opinions of the state agency psychological consultants, finding that their limitations were consistent with the evidence as a whole and that they encompassed work-related restrictions that could reasonably be expected to result from Vantuyl's severe impairments. *Id.* The ALJ found that no evidence indicated Vantuyl was significantly more limited than previously determined. *Id.*

The ALJ concluded her Step Four analysis by finding Vantuyl to be capable of performing past relevant work as a hand packager, auto detailer, production helper, and warehouse worker. *Id.* The ALJ noted that Vantuyl had performed these jobs during the previous 15 years and that her finding was supported by testimony from the VE. *Id.* Alternatively, at Step Five, the ALJ found Vantuyl would be able to perform a wide range of unskilled work available in significant numbers in the national economy. AR 19. Again relying on the VE's testimony, the ALJ concluded that in light of Vantuyl's age, education, work experience and RFC, his limitations would eliminate only six percent of the jobs available in the unskilled occupational base. *Id.* Examples of jobs Vantuyl would be able to perform include dining room attendant and cleaner.

*Id.* For these reasons, the ALJ concluded Vantuyl had not been disabled since September 24, 2009. *Id.*

### The Substantial Evidence Standard

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates*

*v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### Discussion

Vantuyl raises two issues in arguing that the ALJ's decision is not supported by substantial evidence in the record as a whole:

I.      The ALJ Failed to Address the Limitations Found by the State Agency Psychological Consultants As Per SSR 96-6.

II.     The ALJ Failed to Properly Apply the *Polaski* factors in Determining the Credibility of Vantuyl's Subjective Complaints.

I will address each issue separately below.

## I. Did the ALJ Err in Failing to Address All Limitations Identified by State Agency Psychological Consultants?

Vantuyl argues the ALJ did not sufficiently address the limitations identified by the state agency psychological consultants (consultants) in accordance with Social Security Ruling 96-6p. Specifically, he points out that the consultants identified more limitations than were adopted into the RFC, despite the ALJ's finding that the consultants' opinions were consistent with the record and given substantial weight. He argues the ALJ should have explained why she adopted some limitations and not others.

The Commissioner argues the limitations in the ALJ's RFC assessment account for all the limitations identified by the consultants, even though the ALJ did not adopt the precise words used by the consultants. The Commissioner also points out that the ALJ is required to formulate the RFC based on all evidence in the record and contends that the ALJ did so in this case. Finally, the Commissioner argues that moderate limitations – the most severe level of limitations identified by the consultants – do not render an individual *per se* disabled.

The ALJ adopted the following limitations in her RFC:

> The claimant is able to perform routine and repetitive unskilled work (SVP 1 or 2) that does not require maintaining attention or concentration for extended periods; dealing with changes; setting goals; or more than brief, superficial (not intense, frequent or constant) social interaction with coworkers, supervisors or the general public.

AR 14. In discussing the state agency consultants' opinions, the ALJ noted they had found only moderate mental limitations. AR 15. She gave their opinions substantial weight, stating the limitations they identified were consistent with the evidence as a whole and encompassed the work-related restrictions that could reasonably be expected to result from Vantuyl's severe impairments. AR 18. She also noted that no evidence

indicated Vantuyl was significantly more limited than the consultants had previously determined.

Vantuyl argues that the ALJ should have adopted all of the limitations identified by the consultants because the VE testified that with too many moderate limitations, an individual would be precluded from working. Vantuyl's attorney posed the following hypothetical to the VE based on the consultant's RFC assessment:

> In that functional capacity that the state agency indicated there was [sic] be moderate limitations in understanding, remembering, carrying out detailed instructions; a moderate limitation in maintaining attention and concentration; a moderate limitation with working with others without distracting them; a moderate limitation in interacting with the public; a moderate limitation in accepting instructions and criticism; a moderate limitation with getting along with coworkers; a moderate limitation in maintaining social – socially appropriate behavior; a moderate restriction in responding to changes; a moderate restriction in the ability to complete a normal workweek without interaction from psychological symptoms; and a moderate restriction in the ability to perform at a consistent pace without an unreasonable interruption from his symptoms. Would he be able to maintain any of his past work or work in the national economy?

AR 61-62. The VE answered:

> Let me answer it this way. The ones regarding detailed work would not be relevant, but the others are. And at a moderate level, any one or two probably would not preclude employment. If a number of the moderates were acting simultaneously, they would probably preclude his ability [INAUDIBLE].

AR 62.

"A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Buckner v. Astrue*, 646 F.3d 549, 560-61 (8th Cir. 2011). "[T]he hypothetical need not frame

the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments." *Id.* (quoting *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010)). Vantuyl argues that the hypothetical posed by his attorney accounted for all his proven impairments while the ALJ's hypothetical did not. The ALJ's hypothetical was as follows:

> Mr. Linhart, first hypothetical, no physical restrictions, mental only. This is an individual that needs unskilled work with limited social interaction; could occasionally handle social interaction with coworkers, supervisors, general public, but contact can be brief, superficial, occasional, but not extended or frequent or constant; and then work that's SVP 1/2, routine, repetitive work that does not require extended concentration or attention or dealing with pace or setting goals. Then with this hypothetical, could a person return to any of the unskilled past work?

AR 57. The VE answered that past jobs as hand packager, auto detailer, warehouse worker, production helper and dining room attendant would be available. AR 57-58. The VE also testified that a wide range of other unskilled work would also be available and the identified limitations would exclude only about six percent of those jobs. AR 59-60.

Vantuyl argues the ALJ erred by failing to include in her hypothetical all limitations identified by the consultants. Alternatively, he argues the ALJ erred by failing to provide reasons for why some of the limitations identified by the consultants were excluded from her hypothetical and RFC in accordance with Social Security Ruling 96-6p. Ruling 96-6p provides that the opinions of state agency consultants should be considered expert opinion evidence and although the ALJ is not bound by their findings, he or she "may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6P, 1996 WL 374180 (July 2, 1996). Their opinions "are to be evaluated considering all of the factors set out in the regulations for considering opinion evidence." *Id.*

Contrary to Vantuyl's argument, Social Security Ruling 96-6p does not require the ALJ to provide reasons as to why some of the consultants' limitations were adopted and others were not. It only requires the ALJ to explain the weight given to their opinions. Moreover, I find that all of the consultants' specific limitations are accounted for in some way by the limitations identified by the ALJ. The chart below illustrates this finding:

| Limitations Adopted by ALJ | Limitations Identified by Consultants |
|---|---|
| Routine and repetitive unskilled work (SVP 1 or 2) | Moderate limitations in ability to understand and remember detailed instructions<br><br>Moderate limitations in ability to carry out detailed instructions<br><br>Moderate limitations in ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods |
| Work that does not require maintaining attention or concentration for extended periods | Moderate limitations in ability to maintain attention and concentration for extended periods |
| Work that does not require dealing with changes | Moderate limitations in the ability to respond appropriately to changes in the work setting |
| Work that does not require setting goals | Moderate limitations in ability to set realistic goals or make plans independently of others. |
| No more than brief, superficial (not intense, frequent or constant) social interaction with coworkers, supervisors or the general public | Moderate limitations in ability to work in coordination with or proximity to others without being distracted by them<br><br>Moderate limitations in ability to interact appropriately with the general public<br><br>Moderate limitations in ability to accept |

| | instructions and respond appropriately to criticism from supervisors |
| | |
| | Moderate limitations in ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes |
| | |
| | Moderate limitations in ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness |

I find that the limitations the ALJ included in her hypothetical to the VE, and in her RFC determination, adequately account for all of Vantuyl's credible limitations, meet the requirements of Social Security Ruling 96-6p and are supported by substantial evidence in the record as a whole.

## II. *Did the ALJ Improperly Apply the* **Polaski** *Factors in Determining Vantuyl's Credibility?*

Vantuyl argues the ALJ failed to properly analyze the *Polaski* factors in that she (a) simply dismissed his allegations of difficulty concentrating, paranoia, depression and anxiety by saying the record did not reflect that these symptoms were as severe as he alleged, (b) she did not address the work performance assessment completed by Vantuyl's employer and (c) she did not address the consultative examiner's comment that his inability to maintain long-term employment and independent living was indicative of reduced functioning. The Commissioner responds that the ALJ conducted an appropriate credibility determination and provided good reasons supported by substantial evidence for discrediting the severity of symptoms that Vantuyl alleged.

The standard for evaluating the credibility of a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must consider the claimant's daily activities; duration, frequency and intensity of pain;

dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. *Polaski*, 739 F.2d at 1322. The claimant's work history and the absence of objective medical evidence to support the claimant's complaints are also relevant. *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000). These factors have been incorporated into the Commissioner's regulations. *See* 20 C.F.R. §§ 404.1529 and 416.929.

The ALJ is not required to explicitly discuss each factor as long as he or she acknowledges and considers the factors before discrediting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnart*, 393 F.3d 798, 801 (8th Cir. 2005). The ALJ may not discount subjective complaints solely because they are not supported by objective medical evidence. *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008); *O'Donnell v. Barnhart*, 318 F.3d 811, 816 (8th Cir. 2003).

The ALJ did not, as Vantuyl contends, rely solely on the lack of objective medical evidence to discredit Vantuyl's subjective allegations. Instead, the ALJ expressly identified the following reasons: (a) the subjective allegations were inconsistent with the objective evidence, (b) Vantuyl had previously been able to work despite his impairments and there was no evidence his condition had deteriorated over time, (c) he received conservative treatment and (d) his daily activities and social interactions demonstrated his symptoms were not as severe as alleged. AR 14-18. I find no error in this aspect of the ALJ's credibility analysis.

Vantuyl also contends that the ALJ failed to address other evidence that arguably supported his allegations. This evidence includes a work performance assessment from his supervisor at Appliance Furniture and Retail, where Vantuyl delivered furniture and

appliances from July 30, 2007, to October 15, 2007, November 12, 2007, to July 31, 2008 and March 7, 2009, to March 16, 2009. AR 198-99. Vantuyl argues this assessment demonstrates significant difficulty in his ability to function. The supervisor indicated Vantuyl's work quantity/pace and ability to carry out complex/detailed instructions and procedures was "poor" and his ability to understand and carry out simple instructions and procedures, manage workplace stress and manage personal stress while in the workplace was "very poor." AR 198. All other work-related functions were described as "adequate" or "good" and the supervisor noted that Vantuyl no longer worked there because he quit. AR 198-99.

I find that the ALJ's credibility determination is supported by substantial evidence, even when considering this assessment. In reviewing the ALJ's credibility determination I must consider the evidence that both supports and detracts from the ALJ's decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). It is not appropriate to reverse the ALJ's decision simply because some evidence would support a different conclusion. *Perks*, 687 F.3d at 1091. An ALJ is not required to discuss every piece of evidence that was submitted and an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). I must defer to the ALJ's determination regarding the credibility of testimony as long as it is supported by good reasons and substantial evidence. *Id.* (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

The work performance assessment from one of Vantuyl's past supervisors provides some support for Vantuyl's limitations, but does not establish that his impairments are as disabling as Vantuyl has alleged. Indeed, most of the limitations identified by the supervisor were incorporated into the ALJ's RFC finding. Therefore, the ALJ's credibility determination remains supported by substantial evidence.

Vantuyl also argues that the ALJ should have acknowledged a comment by Dr. Baker which, he contends, supports his subjective allegations. Dr. Baker stated

Vantuyl's "inability to maintain long-term employment and independent living is indicative of reduced functioning." AR 443. This is not necessarily consistent with Vantuyl's subjective allegations that he is totally disabled and unable to perform any work. Similar to the work performance assessment, Dr. Baker only identified that Vantuyl's impairments cause "reduced functioning," which is different from the inability to perform all work. I find that this evidence is consistent with the ALJ's RFC assessment and does not undermine the ALJ's credibility determination, which remains supported by substantial evidence.

While the ALJ may not have discussed all of the factors that are used to assess credibility, she did acknowledge those factors before analyzing, and ultimately discrediting, Vantuyl's allegations. She also provided good reasons for concluding that his allegations were less than fully credible. Based on my review of the entire record, I find the ALJ's reasons for discrediting Vantuyl's allegations are supported by substantial evidence in the record as a whole. Therefore, I defer to the ALJ's credibility determination. *See Guilliams*, 393 F.3d at 801.

### *Conclusion*

After a thorough review of the entire record and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Vantuyl was not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **affirmed**. Judgment shall be entered in favor of the Commissioner and against Vantuyl.

**IT IS SO ORDERED.**

**DATED** this 20th day of November, 2013.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE